JEWELL *v.* STATE.

4699                                          251 S. W. 2d 486

Opinion delivered October 6, 1952.

*Thomas B. Tinnon,* for appellant.

*Ike Murry,* Attorney General and *George E. Lusk, Jr.,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. Appellant, who worked at Norfork Dam in Baxter county, was convicted of arson and sentenced to serve a year in prison.

Five recreational cabins owned by Karl Bahl were destroyed by fire in March, 1952, when flames from Cabin No. 1 spread to the other four, entailing a loss estimated to be $20,000 to $25,000.

Clifton Jewell, the defendant below and appellant here, was estranged from his wife. The latter was caretaker of the cabins and just before the fire started Jewell thought she was on the premises. When arrested he first denied having been on the grounds, but later admitted that he had gone there to procure Mrs. Jewell's signature

to a joint income tax return. His signed explanation was that routine chores involving the use of his car had been attended to, and that he parked the car some distance from the cabins and walked the remaining distance. When there was no response to repeated calls he went to the rear of Cabin No. 1, opened a window, and entered. He ''opened a closet curtain'' because of the darkness, struck a match, ''and all in the cabin flamed''. The defendant says that he then left by opening the door, did not look back, and for the first time learned that the cabins had been destroyed when some one told him the next morning.

In testifying Jewell detailed his movements from 3:50 p. m. until he parked his automobile approximately three-quarters of a mile from the cabins. An explanation was that some trash had to be taken from his own home and that he attached a trailer to the car and drove four and a half miles to the point where this rubble was dumped. On cross-examination he agreed with an estimate that at 4:55 he walked from his car to the cabins—''three-quarters of a mile, maybe''.

Under these estimates the defendant was at the cabins not later than 5:10. When asked whether he returned to his car by the same route appellant replied, ''There wouldn't be a hundred yards [difference] altogether through the brush. You couldn't pick exactly the same way''. From where the car was parked a highway led to the cabins, but the distance was about a mile and a half. Appellant testified that because of family troubles he did not use the highway—he did not want people to think he was ''pursuing'' his wife.

Jewell admitted his signature to the statement made to Sheriff J. D. King of Baxter county and Carl Miller of the State Police force, but said it was not entirely true, adding, ''They read it, and I also read it, and signed it, and to me there was a threat''. However, he insisted that in talking with Miller he had denied entering the cottage or striking a match, and only consented to sign the statement when convinced that his domestic discord would be aired if he did not. As a second ground for

urging exclusion of the statement Jewell testified that he was taken to Little Rock with the assurance that a lie-detector test would be given, and for no other reason. While at State Police Headquarters repeated requests were made, but nothing was done about it. At the time Jewell was taken from Baxter county no warrant of arrest had been served, and it is not in the record that one had been issued.

It will thus be seen that the material differences between the statement and Jewell's defense testimony were (a) his written admission that the cottage was entered and a match struck; (b) his insistence at trial that a wrong was done him when the officials refused to use the lie-detector. However, there was no denial (but on the contrary an affirmative admission) that he told Miller or King what appeared in the written statement.

While the evidence to establish a felonious intent is circumstantial, we think the proof was sufficient to sustain the jury's action. Shortly before discovery of the fire a man was seen going to one of the cabins. He wore a tan hat, striped jacket, and khaki trousers, and was carrying what appeared from a distance to be a gun. Jewell admitted that he had a .22 caliber rifle and kept it with him for use in killing small game. He had just seen a deer and followed it for a short distance in an endeavor to get a shot at it.

There was testimony that when first seen the fire was a small blaze, then suddenly it spread or "flashed up" as though some highly inflammable substance had been used. A broken fruit jar was found on the outside of Cabin No. 1. It had not been fused by heat as had glass within the buildings. An attendant who looked after the grounds had recently burned yard grass in order to reduce the fire hazard. All gas jets in each cabin were found to be closed, and there was no water heater in the cabin where the fire started. Footprints were found leading from the building (presumptively Cabin No. 1) to the point where appellant says he parked his car and "most of them went along the edge of the

field or through the woods''. These tracks or footprints matched shoes belonging to the defendant. Clothing, such as had been described by the witness who observed a man approaching the premises, was found in appellant's home.

Our view is that the testimony was sufficient.

Other issues raised are, (a) that the court abused its discretion in not granting a continuance; (b) names of state witnesses were not indorsed on the information; (c) the written statement should not have gone to the jury, and (d) the defendant's Instructions Nos. 1, 2, and 3 should have been given.

In a supplemental motion for a new trial it was alleged that on March 8th—five days after the fire—appellant's attorney went to the scene of the fire and made an unsuccessful search for the lock on ''the one door of said cabin''; that after trial it was ascertained that the lock had been taken and retained by Sheriff King who had not mentioned the fact before or during trial. The lock, according to a supporting affidavit, was closed, ''and this made it impossible for [Jewell] to have left the cabin through the door, as set forth in his purported confession''.

We think the testimony of Sheriff King and Officer Miller to the effect that Jewell's written statement was voluntary made a question for the jury, and since an appropriate instruction on this point was given the objection must be rejected. Instructions given by the court adequately covered the matters urged as prejudicial in refusing to give defendant's Instructions Nos. 1, 2, and 3. We are also of the view that the supplemental motion was properly overruled. The sheriff was a witness and could have been asked regarding any articles found on the premises. There is nothing to indicate that any evidence was intentionally concealed.

It is finally insisted that the court abused its discretion in refusing to grant a continuance. The record shows that appellant was detained March 4th and brought to Little Rock on the 5th. He was returned to Mountain

Home about nine o'clock the night of the 5th. On March 10th the court directed that the defendant be sent to State Hospital for mental examination. He remained in the Hospital's custody until April 3rd. On the afternoon of that day he was released on bond at 5 o'clock. April 7th the defendant's motion for continuance was overruled, but court adjourned until the following day.

The trial judge specifically found that the defendant had not been denied an opportunity to consult counsel; that the attorney then representing him had been retained shortly after the cabins were burned, and in general no fact showing that the defendant would be adversely affected had been shown. Few procedural orders are better established than the rule that refusing to postpone a trial rests within the discretion of the court. We find no abuse of such discretion in the case at bar.

Collateral issues are discussed in the briefs, some of which have, in previous cases, been decided adversely to the contentions made here. For this reason they will not be discussed.

Affirmed.